```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

MURRAY LAMONT KING, JR.,

                      Plaintiff,      **6:15-cv-06137(MAT)**
                                          **DECISION AND ORDER**
      -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                      Defendant.
_____

## I.  Introduction

Represented by counsel, Murray Lamont King, Jr. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") denying his application for Supplemental Security Income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings.

## II. Procedural Status

On November 6, 2010, Plaintiff protectively filed for SSI, alleging disability commencing on March 6, 2010. After his application was denied, Plaintiff requested a hearing, which was held on July 8, 2014, in Rochester, New York, before administrative law judge Michael W. Devlin ("the ALJ"). Plaintiff appeared with his attorney and testified, as did impartial vocational expert

Julie A. Andrews. The ALJ issued an unfavorable decision on August 11, 2014. Plaintiff requested review by the Appeals Council, which declined to hear the case on January 16, 2015, making the ALJ's decision the final decision of the Commissioner. This timely action followed.

The parties have cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons discussed below, Plaintiff's motion is granted, and the matter is remanded for further administrative proceedings.

**III. Summary of Relevant Evidence**

Because Plaintiff challenges only the mental aspect of the ALJ's residual functional capacity ("RFC") assessment,[1] and, in particular, the ALJ's weighing of medical source opinions, the Court limits its factual summary to the functional assessments offered by the mental health providers who treated him.

**A.  Medical Source Opinions**

Licensed Master Social Worker Shannon Mackey ("LMSW Mackey") completed a psychological assessment for the determination of

---

[1] The ALJ found that notwithstanding his severe impairments of depressive disorder, NOS; psychotic disorder, NOS; PTSD; and status-post gunshot wounds right hip, right knee, and chest, Plaintiff has the mental RFC to "understand, remember, and carry out simple instructions and tasks; occasionally interact with co-workers and supervisors; rarely work in conjunction with co-workers; can have little to no contact with the general public; and is able to consistently maintain concentration and focus for up to two hours at a time.

employability on June 2, 2011. See T.239-41.[2] She indicated Plaintiff was depressed, and was experiencing auditory hallucinations, nightmares and anxiety. Plaintiff, on occasion, had episodes attributed to his psychiatric conditions including medical hospitalizations or emergency room visits; acute psychiatric hospitalization; loss of a job or failure to complete education or training; and behavior that interfered with daily activities. LMSW Mackey diagnosed Plaintiff depressive disorder and post-traumatic stress disorder ("PTSD"). She opined that Plaintiff was "moderately" limited, i.e., "unable to function 10-25% of the time, in demonstrating the capacity to perform simple and complex tasks independently; and the capacity to perform low stress and simple tasks. T.241. LMSW Mackey opined these limitations would be expected to last for six months. T.241.

On February 27, 2012, LMSW Mackey completed another psychological assessment for the determination of employability dated February 27, 2012. T.244-47. She again indicated Plaintiff suffered from depression, auditory hallucinations, nightmares and anxiety, and that on occasion, he suffered episodes attributed to his psychiatric conditions including medical hospitalizations or emergency room visits; acute psychiatric hospitalization; loss of a job or failure to complete education or training; and behavior

---

[2] Numerals preceded by "T." refer to pages in the certified administrative transcript filed by the Commissioner in this matter.

that interfered with daily activities. Diagnoses were depressive disorder, PTSD, psychotic disorder and alcohol abuse. LMSW Mackey again opined that Plaintiff was moderately limited, defined as unable to function 10-25% of the time, in demonstrating the capacity to perform simple and complex tasks independently; and the capacity to perform low stress and simple tasks. She also indicated that he was moderately limited, defined as unable to function 10-25% of the time, in the capacity to follow, understand and remember simple instructions and directions. These limitations were expected to last three to six months.

On October 23, 2012, LMSW Joyce Smith completed another psychological assessment for determination of employability. T.272-75. She indicated that Plaintiff's depression symptoms included sadness, anger, frustration, easy agitation, and auditory and visual hallucinations. On occasion, he suffered episodes attributed to his psychiatric conditions including acute psychiatric hospitalization; suicide attempt; and decompensations (episodes of psychosis). LMSW Smith noted Plaintiff was diagnosed with psychotic disorder and opined that he was "very limited", defined as unable to function more than 25% of the time, with regard to performing simple and complex tasks independently; maintaining attention and concentration for rote tasks; and performing low stress and simple tasks. T.274. LMSW Smith opined that Plaintiff was "moderately limited," defined as being unable to function 10-25% of the time,

in his capacity to follow, understand and remember simple instructions and directions; and regularly attend to a routine and maintain a schedule. T.274. LMSW Smith indicated Plaintiff appeared permanently disabled due to serious and persistent mental illness, and that his condition was not expected to improve. T.275.

**IV. Scope of Review**

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the Commissioner employed the proper legal standards. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). When conducting a substantial evidence review, a court's responsibility is "'to conduct a searching inquiry and to scrutinize the entire record, having in mind that the Social Security Act . . . is remedial in purpose.'" Monette v. Astrue, 269 F. App'x 109, 110 (2d Cir. 2008) (unpublished opn.) (quoting McBrayer v. Secretary of Health & Human Servs., 712 F.2d 795, 798–99 (2d Cir. 1983)).

"The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)). In assessing a legal determination made by the Commissioner, "[the] court cannot fulfill its statutory and constitutional duty to review the decision of the

administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal." Townley, 748 F.2d at 112 (internal quotation marks and citations omitted).

## V. Discussion

### A. RFC Not Supported by Substantial Evidence

Pursuant to Social Security Ruling ("SSR") 83-10, RFC is defined as follows: "A medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s). . .." SSR 83-10, 1983 WL 31251, at *7 (S.S.A. 1983). "As explicitly stated in the regulations, RFC is a medical assessment; therefore, the ALJ is precluded from making his assessment without some expert medical testimony or other medical evidence to support his decision." Gray v. Chater, 903 F. Supp. 293, 301 (N.D.N.Y. 1995) (citing 20 C.F.R. § 404.1513(c), (d)(3)); other citation omitted).

Here, the ALJ found Plaintiff to have the severe mental impairments of depressive disorder, psychotic disorder and PTSD. T.19. In his RFC assessment, the ALJ only limited Plaintiff to simple work, with occasional interactions with co-workers and supervisors, and rare work in conjunction with co-workers. T.21. Plaintiff argues that these limitations are contrary to the multiple assessments by Plaintiff's treating therapists, LMSW

Mackey and LMSW Smith. Plaintiff further contends that the ALJ erroneously failed to reconcile the conflict between his mental RFC assessment of Plaintiff, and LMSW Mackey's medical source statement. Plaintiff asserts that the ALJ also improperly "played doctor" to find that Plaintiff experienced "a steady trend of improvement" in regards to his mental health. As discussed further below, the record does not support the ALJ's conclusion.

LMSW Mackey, as summarized above, offered two consistent medical source statements dated June 2, 2011, and February 27, 2012. On each occasion, LMSW Mackey opined that Plaintiff was "moderately limited" in demonstrating the capacity to perform simple or complex tasks independently; and the capacity to perform low stress and simple tasks. "Moderately limited" was defined as being unable to function 10-25% of the time, in the affected areas. See T.241, 246. In February 2012, LMSW Mackey added a further limitation, stating that Plaintiff was "moderately limited," i.e., unable to function 10-25% of the time, in his ability to follow, understand and remember simple instructions and directions. T.246. At the hearing, the vocational expert ("VE") testified that if an individual were off-task for 25% of the workday, he or she would be unable to sustain employment. T.46.

The ALJ gave "some weight" to this opinion. He stated he rejected LMSW Mackey's opinion that Plaintiff was precluded from work for three to six months, but that was the only portion of the

report that the ALJ specifically discounted. He then stated that LMSW Mackey's assessment of "moderate psychiatric limitation is supported by the overall record," T.23, and found Plaintiff capable of performing simple work. However, this finding clearly is at odds with the VE's testimony about the employability of an individual with the "moderate[ ] limit[ations]" assigned by LMSW Mackey. It is apparent that there is a disconnect between the ALJ's understanding of the term "moderately limited" and LMSW Mackey's understanding of those terms as defined in the form she completed, i.e., unable to function 10-25% of the time. Simply put, LMSW Mackey's medical source statement is not consistent with the ALJ's mental RFC assessment, which leaves the ALJ's RFC assessment essentially unsupported by any medical opinion evidence. The Court therefore is unable to conclude that the RFC assessment is based on substantial evidence.

### B.  Mischaracterization of the Medical Evidence

Plaintiff argues that the ALJ selectively parsed the record and ignored evidence of the severe symptoms and limitations caused by Plaintiff's depressive disorder and PTSD. The ALJ acknowledged that "the record is punctuated with occasional references to serious symptoms," but he significantly understated this evidence and offered his own lay opinion that Plaintiff was experiencing a "steady trend of improvement." T.23.

As an initial matter, the alleged "steady trend of improvement" is not supported by the record. The only evidence the ALJ cites to support this "improvement" is the note authored by another of Plaintiff's social workers, LMSW Kerry Bauer. Plaintiff self-referred in April 2014, for depression and anxiety. On May 5, 2014, Plaintiff reported moderate anxiety and depression. LMSW Bauer stated that Plaintiff's thought content was remarkable for negative ruminations; his affect was labile; and his mood was depressed and angry. T.354. On May 22, 2014, LMSW Bauer stated that Plaintiff's thought content was remarkable for negative ruminations; his affect was flat; and his mood was depressed. He reported low appetite and waking up periodically throughout the night. T.358. LMSW Bauer opined that there was "some incongruence between [Plaintiff's] reports of anxiety symptoms and the flat affect with extreme minimal visible signs of anxiety presented." T.358. During an appointment, Plaintiff requested to leave early because his grandmother was having surgery. LMSW Bauer reported that he was "agitated as he rapidly walked out[,] . . . yelling[,] 'my grandmother is going to die, man!'" T.359. LMSW Bauer observed that Plaintiff's thought content was remarkable for negative ruminations; his affect was labile; and his mood was depressed, anxious and angry. T.359. Apart from one mention of Plaintiff's affect being "flat" and incongruent with alleged anxiety, the rest of LMSW Bauer's observations indicate that Plaintiff's affect and

mood were consistently congruent with his diagnoses of depression and disorder. Moreover, a "flat" affect is commonly a symptom of depression,[3] with which Plaintiff repeatedly has been diagnosed. It is unclear to the Court how any of LMSW Bauer's treatment notes document an improvement in Plaintiff's psychiatric symptoms. The Court agrees with Plaintiff that this one treatment note is an outlier, and does not represent a "trend." As Plaintiff notes, Plaintiff had a limited treatment relationship with LMSW Bauer, meeting her only three times. In the third meeting, she asserted there was "limited time spent with writer" and that he left early because of concerns about his grandmother. Thus, this treatment note, purportedly representative of a "steady trend of improvement," was merely thirty minutes of treatment during the three-year relevant period.

While focusing on one treatment note where LMSW Bauer questioned the severity of Plaintiff's anxiety (but, notably, not his depressive symptoms), the ALJ ignored multiple other references in the records to Plaintiff's serious symptoms. For instance, Plaintiff was treated by LMSW Paul Wilson on September 18, 2013, reporting that he was stressed and depressed; LMSW Wilson rated Plaintiff's depression as "severe." T.350. On examination, LMSW

---

[3] A "flat affected" is defined, e.g., as "[a] marked attenuation of emotional range, a sign often associated with major depression." MCGRAW-HILL CONCISE DICTIONARY OF MODERN MEDICINE (2002), available at http://medical-dictionary.thefreedictionary.com/flat+affect (last accessed Apr. 8, 2016).

Wilson noted Plaintiff had poor hygiene, pressured speech, a constricted affect, a depressed mood, and impaired judgment; his thought content was remarkable for negative ruminations. T.350. He assessed a GAF score of 41-50, indicative of "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupation, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Association, DIAGNOSTIC AND STATISTICAL MANUAL, at 34 (4th ed.2000). On October 9, 2013, LMSW Wilson noted that Plaintiff continued to feel stressed and depressed and to display pressured speech, thought content remarkable for negative ruminations, a depressed mood, and impaired judgment. T.351. He eventually was discharged from treatment at Rochester Mental Health on November 12, 2013, due to a failure to achieve mutually-agreed upon goals. LMSW Wilson stated that "no change was measured" in Plaintiff's severe depression; Plaintiff struggled with social relationships, and no functional change in this area had been measured. T.339. LMSW Wilson noted that Plaintiff had last scored "severe" on depression screening tests, and his prognosis was "limited" given his incomplete participation in treatment. T.339.

The ALJ also selectively parsed the records in regards to Plaintiff's inappropriate behaviors during treatment, only citing one time, in March 2011, when Plaintiff was described as being "argumentative and verbally and physically threatening to his

doctor." T.22. In April 2012, Plaintiff became very upset and verbally abusive with Dr. Zabad, his primary care physician. T.232. He kept repeating that after being shot three times for no reason, his "life never came back to normal." T.232. Despite Dr. Zabad's attempts to assuage his anger, Plaintiff would not calm down. In August 2012, Plaintiff arrived at Rochester Mental Health after his scheduled appointment time had passed. He refused to leave when asked, and demanded to speak to his therapist's supervisor. T.234. And, as noted above, in April 2014, he left early from his assessment with LMSW Bauer in a highly agitated state. The ALJ's downplaying of Plaintiff's seriously psychiatric symptoms calls into question the substantiality of the evidence supporting his RFC assessment.

"To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir.1999) (quotation and citation omitted). Where an ALJ mischaracterizes the evidence or relies on only the portions of the record that support a conclusion of "not disabled," a remand is necessary. See Correale-Englehart, 687 F. Supp.2d 396, 439 (S.D.N.Y. 2010) ("[T]he ALJ cherry-picked some of the findings of the [doctor]—notably those that minimized plaintiff's psychological limitations and ignored others. This was of course improper."); Fuller v. Astrue, No. 09-cv-6279, 2010 WL

5072112, at *6 (W.D.N.Y. Dec. 6, 2010) ("[T]he ALJ cherry-picked several opinions that were supportive of her decision and disregarded the majority of the medical evidence in the record including that of the treating physicians. This type of selective analysis of the record is improper.").

The Court acknowledges that, under the regulations, opinions from social workers such as LMSW Mackey and LMSW Smith, are not considered "acceptable medical sources," they are nevertheless "important and should be evaluated on key issues such as impairment severity and functional effects." 20 C.F.R. § 416.913, see also SSR 06-03p, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006). Where, as here, therapists and social workers have had the longest and most in-depth treating relationships with Plaintiff, their opinions are "not only helpful, but critically important," Bergman v. Sullivan, 88-CV-513, 1989 WL 280264, at *3 (W.D.N.Y. Aug. 7, 1989) (holding that treating social worker is "a non-medical source whose opinion concerning the nature and degree of [claimant]'s impairment is not only helpful, but critically important, since he is the only treating source"); see also White v. Comm'r, 302 F. Supp.2d 170, 174-76 (W.D.N.Y. 2004) (reversing where the ALJ failed to give appropriate weight to the claimant's social worker, who had a regular treatment relationship with the claimant and whose diagnosis was consistent with the treating psychiatrist).

**VI. Conclusion**

For the foregoing reasons, the Commissioner's denial of SSI to Plaintiff was marred by legal error and was not supported by substantial evidence. Therefore, the Commissioner's motion for judgment on the pleadings (Dkt #13) is denied. Plaintiff's motion for judgment on the pleadings (Dkt #11) is granted to the extent the Commissioner's decision is reversed, and the matter is remanded for further proceedings consistent with this Decision and Order. In particular, the ALJ is directed to request a mental RFC assessment from one of Plaintiff's treating psychiatrists, to re-weigh the opinions of Plaintiff's treating therapists, and to reconsider Plaintiff's RFC in light of the <u>entire</u> record.

**IT IS SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:   April 11, 2016
         Rochester, New York